**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 20 2013, 8:31 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KEVIN C. SCHIFERL**
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JOHN J. BULLARO**
**TIMOTHY A. ALSPACH**
Bullaro & Carton, P.C.
Highland, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| REPUBLIC SERVICES d/b/a ABLE DISPOSAL COMPANY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1204-PL-150 |
| | ) | |
| BULLARO & CARTON, P.C., | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George C. Paras, Judge
The Honorable Robert G. Vann, Magistrate
Cause No. 45C01-0601-PL-18

**March 20, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

STATEMENT OF THE CASE

Republic Services d/b/a Able Disposal Company ("Republic") appeals the trial court's entry of judgment in favor of Bullaro & Carton, P.C. ("B&C"). We affirm.

ISSUES

Republic raises three issues, which we restate as:

I.  Whether the trial court had subject matter jurisdiction over the case.

II.  Whether B&C failed to exhaust administrative remedies prior to filing suit.

III.  Whether the trial court abused its discretion in awarding prejudgment interest to B&C.

In addition, B&C has raised a separate issue by motion, which we choose to address here: whether this Court should impose sanctions against Republic.[1]

FACTS AND PROCEDURAL HISTORY

Republic is a nationwide company. During the times relevant to this appeal, Republic used a third party administrator, Gallagher Basset Services, Inc. ("Gallagher"), to manage its litigation obligations. Gallagher hired attorneys, with Republic's input, to defend Republic against tort claims. In addition, Gallagher paid the attorneys, subject to Republic's approval of invoices, using funds provided by Republic.

In 2002, Gallagher assigned three tort cases to B&C. Republic requested B&C's services because one of B&C's attorneys, Cornelius J. Harrington, III, had worked on

---

[1] B&C has also filed a motion to take judicial notice, a motion for leave to file a reply in support of its motion to take judicial notice, and a motion for leave to file a reply in support of its motion for sanctions. In addition, both parties have requested oral argument. We deny the motion to take judicial notice, grant the motion for leave to file a reply in support of the motion for judicial notice, deny the motion for leave to file a reply in support of the motion for sanctions, and deny the requests for oral argument by separate orders.

cases for Republic at a previous law firm.  Thus, Republic and B&C formed an attorney-client relationship with respect to those three cases.

All three of the cases were settled, and B&C submitted invoices to Republic for approval.  Republic, believing that the bills were unreasonably high, paid B&C less than the requested amounts.  Informal attempts to resolve the billing dispute were unsuccessful.  Consequently, B&C sued Republic in January 2006 for breach of contract, demanding $43,940.39 for unpaid fees.  B&C obtained a default judgment against Republic, but Republic successfully petitioned to have the default judgment set aside.[2]  The case was tried to the bench, and B&C requested findings of fact and conclusions of law.  After an evidentiary hearing, the court issued judgment in favor of B&C.  The court ordered Republic to pay B&C $43,940.39 for unpaid fees plus $25,248.21 in prejudgment interest.  This appeal followed.

<u>DISCUSSION AND DECISION</u>

I. SUBJECT MATTER JURISDICTION

Republic argues that the trial court did not have jurisdiction to hear the case because the parties were obligated to submit their fee dispute to a fee arbitration committee.  B&C argues that no such committee exists.

Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs.  *K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006).  A court has subject matter jurisdiction where the claim before it falls within

---

[2] B&C appealed the trial court's decision to set aside the default judgment, but this Court dismissed B&C's appeal in an unpublished order.  *Bullaro & Carton, P.C. v. Republic Servs.*, No. 45A04-0703-CV-173 (Ind. Ct. App. Sept. 10, 2007), *trans. denied*.

the general scope of authority conferred upon the court by constitution or by statute. *Anderson v. Eliot*, 868 N.E.2d 23, 29 (Ind. Ct. App. 2007), *trans. denied*. If the facts before the trial court are in dispute and the trial court conducted an evidentiary hearing, then we give its factual findings deference on the question of jurisdiction. *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001). Thus, we will reverse only if the factual findings are clearly erroneous, meaning the evidence does not support them. *Id.* In general, the party challenging subject matter jurisdiction carries the burden of establishing that jurisdiction does not exist. *Id.* at 404.

In this case, Republic cites to Indiana Professional Conduct Rule 1.5, Comment 9, which provides, in relevant part,

> If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the bar, the lawyer must comply with the procedure when it is mandatory, and, even when it is voluntary, the lawyer should conscientiously consider submitting to it.

Republic argues that the Indiana State Bar Association ("ISBA") has established such a committee, and the trial court was thus deprived of subject matter jurisdiction over the parties' dispute. Assuming, *arguendo* only, that the Indiana Supreme Court, as the enactor of the Indiana Rules of Professional Conduct, intended for Comment 9 to limit a trial court's subject matter jurisdiction over fee disputes, we must determine from the record whether the bar has established such a fee dispute procedure.

Giving deference to the trial court as the finder of fact, Republic did not demonstrate that a fee dispute resolution procedure exists. Republic cites to a "Directory of Fee Arbitration Committees" published by the American Bar Association, Appellant's

4

App. pp. 687-96, but that document does not prove that the ISBA has such a committee or that any such committee has a procedure for resolution of fee disputes. The directory lists state-by-state contacts, some of which are identified as fee arbitration coordinators or offices of fee arbitration, and others are simply individual names. Indiana's entry merely provides the name of an ISBA employee. Furthermore, B&C's expert witness on attorney fees, Steven A. Johnson, was unaware of any fee arbitration process established by the ISBA and had never heard that fee disputes must be submitted to a fee arbitration committee. Based on this evidence, the trial court could have reasonably concluded that the ISBA has not established a procedure for resolution of fee disputes, and the court was therefore not deprived of jurisdiction to consider B&C's claim.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Republic next claims that B&C failed to exhaust administrative remedies prior to filing suit. This claim is a continuation of Republic's argument in section I above, because failure to exhaust administrative remedies is a defect in subject matter jurisdiction. *State ex rel. Atty. Gen. v. Lake Super. Court*, 820 N.E.2d 1240, 1247 (Ind. 2005). An administrative remedy, where one is available, must be pursued before a claimant is allowed access to the courts. *Rhines v. Norlarco Credit Union*, 847 N.E.2d 233, 237 (Ind. Ct. App. 2006), *trans. denied*.

Here, Republic's Case Handling Guidelines ("the Guidelines") provide that it may decline to pay attorney invoices that it deems to be unreasonable. The Guidelines further provide, in relevant part:

[Republic] will allow the law firm to appeal any declination of payment. Initial questions or concerns regarding the reduction or declination of charges should be directed to the person making the reductions. If there is no satisfactory resolution, then the appeal should be made to the Claims Manager and then to the Director of Risk Management. Finally, if the dispute is not resolved, then it should be directed to [Republic's] General Counsel.

Appellant's App. p. 741. Republic argues that this provision established a mandatory administrative remedy that B&C failed to follow, thereby depriving the trial court of jurisdiction over the dispute.

The exhaustion doctrine essentially applies to cases that involve statutory or administrative agency remedies. *Indianapolis-Marion Cnty. Pub. Library v. Shook, LLC*, 835 N.E.2d 533, 538 (Ind. Ct. App. 2005). Moreover, the only nonstatutory or non-administrative agency context in which the exhaustion doctrine has been found to apply involved the rules of a private association that had established a remedial procedure. *Id.*

In this case, Republic is not a private association establishing remedial procedures for members. Rather, it is a business that engaged in professional, independent transactions with B&C. Furthermore, the plain language of the provision of the Guidelines quoted above does not bar B&C from filing suit to seek unpaid fees. Instead, the provision merely states that a law firm may talk with higher-level managers at Republic when a fee dispute cannot be resolved at a lower level. Consequently, Republic failed to carry its burden of demonstrating that a defined, mandatory administrative remedy exists, and the trial court could have reasonably determined that it had subject matter jurisdiction over the case. *See id.* at 539 (determining that the Library's contractual claims submission process was not a required administrative remedy).

6

## III. PREJUDGMENT INTEREST

Republic argues that the trial court should not have awarded prejudgment interest to B&C.[3] Prejudgment interest may be awarded where the amount of damages can be ascertained by simple mathematical computation and has been allowed even where some degree of judgment must be used to measure damages. *Hayes v. Chapman*, 894 N.E.2d 1047, 1054 (Ind. Ct. App 2008), *trans. denied*. The "ascertainable" standard is in reference to the amount of damages, as distinguished from the liability for those damages. *Ind. Indus. v. Wedge Prods., Inc.*, 430 N.E.2d 419, 427 (Ind. Ct. App. 1982).

We review a ruling on a request for prejudgment interest for an abuse of discretion. *Inman v. State Farm Mut. Auto Ins. Co.*, 981 N.E.2d 1202, 1204 (Ind. 2012). An abuse of discretion occurs when a decision is clearly against the logic and effects of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* We consider only the evidence favorable to the judgment. *Johnson v. Eldridge*, 799 N.E.2d 29, 33 (Ind. Ct. App. 2003), *trans. denied*.

Here, B&C asserted that it was entitled to $43,940.39 in unpaid fees based on invoices that it submitted to the court. The invoices clearly identified the work performed and the amounts due. By contrast, Republic argued to the trial court that it had already "fully reimbursed [B&C] for its reasonable work."[4] Appellee's App. p. 323. In other words, Republic stated it had already paid B&C what was owed. If the trial court

---

[3] Republic does not contest the trial court's determination that it is liable to B&C or the trial court's award to B&C of $43,940.39 for unpaid fees.

[4] Republic also argued that B&C should have sued Gallagher rather than Republic for unpaid fees, an argument that is irrelevant to this issue.

disagreed with Republic, the damages owed to B&C were easily ascertained based on the invoices, requiring only simple calculations. As a result, the trial court did not err by awarding prejudgment interest. *See Hayes*, 894 N.E.2d at 1055 (affirming the trial court's grant of prejudgment interest where damages were based on clearly ascertainable statements of time spent and materials purchased); *Stephens v. Parkview Hosp.*, 745 N.E.2d 262, 267 (Ind. Ct. App. 2001) (reversing the denial of prejudgment interest where the hospital's damages from unpaid bills were clearly stated and ascertainable).

Republic claims that B&C is not entitled to prejudgment interest because the trial court was required to determine whether the unpaid fees were reasonable. In support of its claim, Republic cites *Kummerer v. Marshall*, 971 N.E.2d 198 (Ind. Ct. App. 2012), *trans. denied*. In that case, Marshall and Kummerer were attorneys, and Marshall agreed to take over four of Kummerer's cases while Kummerer was suspended from the practice of law. They agreed that they would split equally any contingent fees recovered without a trial. Three of the four cases were resolved without incident, but when the fourth case settled, Marshall asserted that he should receive 90% of the fee. Kummerer disagreed, and Marshall filed suit.

Kummerer prevailed at trial, but the court denied his request for prejudgment interest. Kummerer appealed, and a panel of this Court affirmed the trial court's denial of prejudgment interest. The Court noted that the trial court had to look beyond the face of the parties' fee splitting agreement and decide whether the parties' forecast of the amount of work each would do in the case was reasonable under Indiana Professional

8

Conduct Rule 1.5(a) and (e). This decision required an exercise of judgment, and thus prejudgment interest was inappropriate.

By contrast, the current case does not involve fee splitting or forecasting what work would be done in the cases. Instead, B&C submitted to the court invoices clearly explaining the work done and the amounts charged. Consequently, *Kummerer* is not controlling and does not mandate reversal of the trial court's judgment in this case.

Next, Republic argues that B&C conceded that its invoices were excessive and unreasonable by agreeing to certain cuts proposed by Republic during pre-lawsuit negotiations. However, Harrington testified that the invoices were for work that was actually performed during the timeframes provided and that the billed amounts were "reasonable." Tr. p. 59. Republic's argument is a request to reweigh the evidence, which we may not do.

Republic also contends that B&C unreasonably delayed the lawsuit by appealing the trial court's decision to set aside the default judgment and by failing to prosecute the case, which caused Republic to file a motion to dismiss for failure to prosecute. Republic further reasons that the time period during which prejudgment interest accrued should be reduced to account for B&C's delays. The purpose of prejudgment interest is to compensate a plaintiff for the lost time value of money. *Johnson*, 799 N.E.2d at 33. Here, a panel of this Court dismissed B&C's appeal of the trial court's decision to set aside the default judgment, but the panel did not rule that B&C's appeal was without merit. Furthermore, the trial court denied Republic's motion to dismiss for failure to prosecute. Under these circumstances, we cannot say that the trial court abused its

discretion by failing to consider these delays when calculating prejudgment interest. *See id.* at 36 (determining that the trial court did not err by refusing to reduce the award of prejudgment interest due to delays caused by the plaintiffs).

Finally, Republic asserts that the trial court awarded B&C prejudgment interest under theories of breach of contract and quantum meruit, which Republic contends was error because the two theories of recovery are mutually inconsistent. We disagree. A party may plead breach of contract and quantum meruit as alternative theories, so long as it recovers only once for its damages. *City of Indianapolis v. Twin Lakes Enters., Inc.*, 568 N.E.2d 1073, 1082 (Ind. Ct. App. 1991), *trans. denied*. Here, there is no evidence that B&C received a double recovery. Instead, B&C received exactly the amount it requested per its invoices.

For these reasons, we conclude that the trial court did not abuse its discretion in awarding prejudgment interest to B&C.

## IV. B&C'S REQUEST FOR SANCTIONS

B&C argues by motion that it is entitled to an award of appellate attorney's fees because Republic's appeal is frivolous. This Court may, in its discretion, assess damages, including attorney's fees, against an appellant if an appeal is frivolous or in bad faith. Ind. Appellate Rule 66(E). We will assess appellate damages only against an appellant who in bad faith maintains a wholly frivolous appeal. *Harness v. Schmitt*, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010). A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious. *Id.*

10

In this case, we have determined that Republic does not prevail. However, we cannot conclude that this appeal is frivolous or that Republic has maintained this appeal in bad faith, particularly with respect to Republic's challenge to the trial court's award of prejudgment interest. Consequently, we deny B&C's request for sanctions. *See id.* at 169 (declining to award appellate attorney's fees to an appellee because the appellant's claims were not "utterly devoid of plausibility").

<u>CONCLUSION</u>

For the reasons stated above, we affirm the judgment of the trial court and deny B&C's request for sanctions.

Affirmed.

BARNES, J., and PYLE, J., concur.